# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,**<br><br>    Plaintiff,<br><br>V.<br><br>**KEVIN TOBERGTE, et al.,**<br><br>    Defendants. | **CIVIL ACTION NO. 5:18-cv-207-KKC**<br><br><br>**ORDER AND OPINION** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on motions to dismiss filed by Defendants Andrew Hall [DE 8] and Kevin Tobergte. [DE 11.] For the reasons enumerated below, the Defendants' motions are **denied**.

## BACKGROUND

On March 18, 2018, southbound Norfolk Southern train 175 collided with northbound Norfolk Southern train M 74 in Georgetown, Kentucky. [DE 1, at 2.] At the time of the collision, Defendants Andrew Hall (conductor) and Kevin Tobergte (locomotive engineer) were operating train 175. [DE 1, at 2.] The impact resulted in significant damage to both locomotives, the derailment of thirteen railcars, and injury to three crew members, including Defendants Hall and Tobergte. [DE 8-1, at 1; DE 14, at 2.]

Plaintiff Norfolk Southern filed this action on April 5, 2018, alleging negligence on the part of Defendants Hall and Tobergte. [DE 1, at 2.] Norfolk Southern specifically asserts that the Defendants violated various federal regulations and railroad operating rules in failing to stop train 175 ahead of red stop signal CP 72.18. Norfolk Southern seeks compensation for property damages

and requests indemnity for any damages sustained by third parties as a result of the collision. [DE 1, at 5.] Defendants Hall and Tobergte now move the Court to dismiss Norfolk Southern's claims against them. [DE 8; 11.]

## **ANALYSIS**

Defendants assert that the Federal Employers' Liability Act ("FELA") requires the dismissal of this lawsuit. Their argument is twofold. First, Defendants contend that Norfolk Southern's lawsuit for property damages precludes them from filing personal injury claims in the venue of their choice. Second, they argue that the railroad's property damage lawsuit is an improper attempt to exempt itself from tort liability. Both assertions require this Court to find that a railroad employer's claim for property damages fits within the purview of FELA Section 5's any "device whatsoever" language. 45 U.S.C. § 55. For reasons stated below, the Court finds that Defendants' arguments fail and Norfolk Southern may proceed on its claims.

FELA provides the exclusive remedy for railroad workers and their dependents to recover from railroads for injuries caused by the negligence of the railroad or fellow employees. 45 U.S.C. § 51; William P. Murphy, *Sidetracking the FELA: The Railroads' Property Damage Claims*, 69 Minn. L. Rev. 349, 394 (1985). Conscious of the thousands of railroad injuries or deaths occurring each year, Congress created a federal solution that helped transfer the risk of "doing business" from the employee to the railroad employer. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). Congress intended FELA to be a "departure from common law principles of liability." *Lewis v. CSX Transp., Inc.*, 778 F. Supp. 2d 821, 834 (S.D. Ohio 2011) (citing *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 807 (6th Cir. 1996)). Accordingly, it eliminated several of the common law defenses that had previously barred railroad workers from prevailing on their tort claims. For example, FELA "abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of

comparative negligence, and prohibited employers from exempting themselves from FELA through contract." *Gottshall*, 512 U.S. at 542. FELA also eliminated the defense of assumption of the risk and abolished a railroad's right to remove an action brought under the statute to federal court. 45 U.S.C. §§ 54, 56; *see Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 62-64 (1943).

Section 5 of FELA, 45 U.S.C. § 55, provides that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable a common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . ." Congress provided only one exception to the general mandate of Section 5. Specifically, the statute permits common carriers to set off amounts contributed to "any insurance, relief benefit, or indemnity that may have been paid to the injured employee." 45 U.S.C. § 55. Thus, amounts advanced to injured employees in these listed scenarios are deducted from the employee's eventual personal injury recovery under FELA.

Defendants first argue that Section 5 precludes any attempt by a railroad employer to dictate where its employees file their FELA claims. Defendants assert that because Norfolk Southern's lawsuit for property damages forces them to bring their FELA claims in this Court, they have been improperly deprived of their choice of venue. In support of their position, Defendants point to the Supreme Court's decision in *Boyd v. Grand Truck W. R. Co.*, 338 U.S. 263 (1949). There, a railroad employee—Boyd—suffered multiple injuries while working for a railroad. *Id.* Following the accident, the railroad advanced money to Boyd against any future FELA recovery. *Id.* at 264. Of note, the signed agreement contained a clause requiring Boyd to file his later FELA claims in either Calhoun County Circuit Court or the Eastern District of Michigan. *Id.* When Boyd filed his FELA suit in Illinois, the railroad sought to enjoin the action based on its executed agreement with Boyd. *Id.*

3

In voiding the agreement between Boyd and the railroad, the Supreme Court observed that a "petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of [§] 5 of the Liability Act." *Id.* Therefore, the Supreme Court concluded that any contract "restricting the choice of venue" was invalid under FELA. *Id.* Here, Defendants argue that like the contract struck down in *Boyd*, the lawsuit filed by Norfolk Southern is an impermissible attempt to restrict the choice of venue for their FELA claims. This is because the lawsuit will result in the Defendants having to bring their FELA claims (in the form of compulsory counterclaims) in this District. *See* Fed. R. Civ. P. 13(a). Defendants also direct the Court's attention to 28 U.S.C. § 1445—the statute that forbids railroad employers from removing FELA claims to federal court. Defendants assert that Norfolk Southern's lawsuit, in addition to forcing them to litigate their claims in this District, renders the removal provision of 28 U.S.C. § 1445 moot. A result which, according to the Defendants, is contrary to the aims of FELA.

This Court is unwilling to stretch the holding in *Boyd* to fit the facts of this case. *Boyd* dealt with a signed contract limiting the employee's choice of forum for future FELA claims, not a lawsuit. And while the term "contract" is explicitly mentioned in Section 5, nothing in the FELA provision precludes a railroad employer from pursuing its own claims for property damages. For Defendants to succeed on this argument, then, they must convince this Court that Norfolk Southern's lawsuit fits within the purview of Section 5's any "device whatsoever" language. As the Court will explain in greater detail below, the Defendants have failed in this endeavor.

Defendants next argue that Norfolk Southern's property damage lawsuit constitutes an impermissible attempt to "exempt itself" from FELA liability. Defendants specifically assert that by setting off their personal injury claims with its own claims for property damages, Norfolk Southern has all but guaranteed that it will not have to pay Defendants' FELA claims. This setoff theory derives

4

from the Seventh Circuit's decision in *Deering v. Nat'l Maint. & Repair, Inc.*, 627 F.3d 1039 (7th Cir. 2010). There, a Seventh Circuit panel concluded that a common carrier's counterclaim for property damages qualified as a "device" for Section 5, 45 U.S.C. § 55, purposes. *Id.* at 1048. Judge Posner specifically reasoned that FELA's legislative history suggested that any setoff claim by a common carrier would be construed as a forbidden "device" under Section 5. *Id.* at 1044.

In asking this Court to adopt and expand the reasoning of *Deering*, Defendants suggest that the Court need not wade into the actual question decided there—whether a counterclaim qualifies as a "device" under FELA Section 5. Instead, Defendants contend that this Court should limit its analysis to whether separate lawsuits for property damages are "devices" within the purview of Section 5. When evaluating the language of Section 5, however, courts ought to treat counterclaims and separate lawsuits as one. If separate lawsuits for property damages qualify as "devices" under Section 5, then surely counterclaims do as well. Alternatively, if counterclaims cannot be construed as "devices" for Section 5 purposes, then separate state actions for property damages also cannot qualify as such.

Only one federal court has examined the question of whether a railroad employer's separate state action for property damages should be considered a "device" under Section 5. *See Norfolk S. Ry. Co. v. Turner*, No. 3:07-CV-145, 2007 WL 2962643, at *5 (N.D. Ind. Oct. 9, 2007).[1] However, five U.S. Courts of Appeals have evaluated the issue as it pertains to counterclaims. And, the Seventh Circuit is the only Circuit to answer the question in the affirmative, holding that a counterclaim indeed qualifies as a "device" under Section 5. The majority view, held by the First, Fourth, Fifth, and Eighth Circuits, is that the term "device" does *not* include a railroad's counterclaims for property damages. *See Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 843 (5th Cir. 2005); *Nordgren v. Burlington N.*

---

[1] It appears that the decision in *Turner* was overturned by *Deering v. Nat'l Maint. & Repair, Inc.*, 627 F.3d 1039 (7th Cir. 2010).

*R. Co.*, 101 F.3d 1246, 1251 (8th Cir. 1996); *Sprague v. Boston & Maine Corp.*, 769 F.2d 26, 29 (1st Cir. 1985); *Cavanaugh v. W. Maryland Ry. Co.*, 729 F.2d 289, 294 (4th Cir. 1984).

The common thread between these majority decisions is a reliance on the plain meaning of the language in Section 5. When construing the plain meaning of a statute, courts must look to the specific language therein, as well as the "language and design of the statute as a whole." *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990). Relying on the Seventh Circuit's opinion in *Deering*, Defendants argue that the any "device whatsoever" language of Section 5 operates as a broad catch-all and should not be limited by the terms immediately preceding it. These terms, however, —"contract," "rule," and "regulation."—are very informative as all refer to the tactics employed by railroads prior to FELA's enactment. *See Nordgren*, 101 F.3d at 1251. It would strain credulity and common sense to expand such a limited set of terms to encompass a railroad's separate action or counterclaim for property damages.

The phrase following Section 5's any "device whatsoever" language is also critical to the Court's decision: "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter." 45 U.S.C. § 55. As noted by the Fourth Circuit in *Cavanaugh*, this language makes clear that something can only be considered a "device" when it exempts a railroad employer from tort liability. 729 F.2d at 292. Separate lawsuits and counterclaims for property damages, however, do not automatically exempt the railroad employer from liability. Instead, the railroad can still be found wholly or partially responsible for the injuries sustained by the employee. *See Cavanaugh*, 729 F.2d at 292. ("It is only when the 'contract . . . or device' qualifies as an 'exempt[ion] itself from any liability' that it is 'void[ed]' under Section 5. But a counterclaim by the railroad for its own damages is plainly not an 'exempt [ion] . .. from any liability' and is thus not a 'device' within the contemplation of Congress."); *Nordgren*, 101 F.3d at 1251. ("Simply stated, the

6

problem with calling BN's proposed counterclaim a 'device' under § 55 is that its use does not exempt the railroad from FELA liability; BN could still be found liable to Nordgren on his FELA claim.").

In sum, after a careful review, the Court adopts the reasoning espoused by the First, Fourth, Fifth, and Eighth Circuits and determines that counterclaims are not "devices" for the purposes of Section 5. Nor are separate state actions for property damages, such as the one filed by Norfolk Southern in this matter. Therefore, the Defendants' motions to dismiss must be denied.

The Court would also like to point out that were it to preclude all property damage claims brought by railroads, an employee involved in an accident would be entirely immune from legal redress—even if the incident in question was entirely their fault. In addition, Norfolk Southern raises an interesting point regarding the statute of limitations. Railroad employees have three years to file personal injury claims under FELA. Under Kentucky tort law, however, a railroad employer only has two years to file a negligence claim for property damages. Therefore, if Defendants prevailed on their argument and railroads were precluded from filing separate property damage claims, employees would simply wait two years to file their FELA claims. At this point, the railroad would be time-barred from bringing a counterclaim for its property damages.

On the other side of the coin, the Court recognizes the negative effects this decision will have on railroad employees wishing to file FELA claims. For one, as the Defendants point out, there may be a race to the courthouse to secure the desired litigation forum. And the railroads, with vast legal resources, may very well win these races. Second, if the railroad employer files its action for property damages in federal court, FELA's anti-removal provision will be rendered moot. Third, the Court is cognizant of the practical effect of a railroad employer's separate lawsuit or counterclaim for property damages. If the trier of fact attributes any significant percentage of fault to the employee, she is unlikely to recover on her personal injury claims. Take for example, a situation where a railroad

7

accident results in $900,000 in property damages and the employee suffers personal injuries in the amount of $100,000. If it is determined that the employee is 10% or more at fault, she will not recover a dime for her personal injuries. The Court submits that all three of these outcomes are far from ideal.

That said, it is not the province of this Court to stretch the plain meaning of the language of Section 5 to arrive at more equitable outcomes. Rather, it is up to Congress to fix the problem. If Congress wishes to preclude railroads from filing separate state actions or counterclaims for property damages, then it should amend the relevant language of Section 5. In the Court's view, Section 5's any "device whatsoever" language has a finite elasticity, and to stretch it to include a railroad's claim or counterclaim for property damages would be a significant overstep.

## **CONCLUSION**

For these reasons, the Court denies the Defendants' motions to dismiss. [DE 8; 11.]

Dated December 10, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY