UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,**<br><br>  Plaintiff,<br><br>v.<br><br>**KEVIN TOBERGTE AND ANDY HALL,**<br><br>  Defendants. | CIVIL ACTION NO. 5:18-207-KKC-MAS<br><br><br>**OPINION AND ORDER** |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Plaintiff/Counterclaim Defendant Norfolk Southern Railway Company's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a Limited New Trial. (R. 239.) In its motion, Norfolk argues that it is entitled to relief from the jury's verdict, which awarded Norfolk zero dollars in damages for two locomotives that were destroyed in the accident at issue. For the reasons stated in this opinion, Norfolk's motion (R. 239) is DENIED.

## BACKGROUND

This case arises from a head-on collision involving two of Norfolk's trains. On March 18, 2018, Norfolk's southbound train 175 collided with its northbound train M74 in Georgetown, Kentucky, causing extensive damage to the locomotives, rail cars, and other property. The Defendants, Kevin Tobergte and Andy Hall, were Norfolk employees who were operating train 175 at the time. Hall and the crew of the M74 train exited the trains before the collision, but Tobergte was unable to exit prior to impact. Both Defendants suffered personal injuries as a result of the accident.

Norfolk brought state law claims for negligence against Tobergte and Hall, alleging that they were negligent in their operation of train 175 and that their negligence caused the collision. Norfolk sought approximately $3.4 million in damages for property that was

1

damaged or destroyed as a result of the collision, including approximately $2.7 million for two locomotives (NS 8798 and NS 4063) that were destroyed. (*See* R. 1.)

Tobergte and Hall filed counterclaims against Norfolk under the Federal Employers' Liability Act, alleging that the M74 train crew was negligent in its operation of that train and that Norfolk was vicariously liable for the injuries they suffered from the accident. (R. 22; R. 23.) Tobergte claimed damages for physical injuries and PTSD that he developed as a result of the collision, as well as damages for pain and suffering, loss of enjoyment of life, past and future lost wages, fringe benefits, and medical and psychological care. (*See* R. 22 at 8-10.) Hall claimed damages for physical injuries and PTSD, past and future lost wages and benefits, past and future loss of earning capacity, pain and suffering, medical expenses, mental anguish, and loss of enjoyment of life. (*See* R. 23 at 11-12, 15.)

After a seven-day trial, the jury returned a verdict finding that each party was negligent and that their negligence was a substantial factor in causing Norfolk's alleged damages. (R. 229 at 1-2.) The jury found that each party was almost equally at fault, apportioning 34% of fault to Tobergte and 33% of fault to both Hall and Norfolk. (*Id.* at 4.) In total, the jury found that Norfolk's damages were $494,909.29. (*Id.* at 5.)

The jury also found that Norfolk was negligent and that each Defendant's damages resulted, in whole or in part, from Norfolk's negligence. (*Id.* at 6, 8.) In apportioning fault for their damages, the jury found that Tobergte and Hall were each 50% at fault for their own injuries. (*Id.*) The jury found that Tobergte's damages totaled approximately $2 million and that Hall's totaled approximately $1.6 million. (*Id.* at 7, 9.)

## I.    The Evidence Presented at Trial

Norfolk claimed damages totaling approximately $3.4 million at trial. Of that total, Norfolk claimed approximately $2.7 million for the two locomotives that were destroyed in the collision. To prove its damages, Norfolk presented evidence showing that the two locomotives were originally worth a total of approximately $3 million, were operating immediately prior to the collision, were destroyed in the collision, and had a depreciated value of approximately $2.7 million at the time of the accident. The Defendants did not dispute that

the locomotives were originally worth $3 million or that they were destroyed in collision. They did, however, dispute Norfolk's evidence of the locomotives' $2.7 million value.

Norfolk supported its valuation with the trial testimony of its employee Eric Thomas, Norfolk's manager of car maintenance. The Defendants presented portions of the deposition testimony of Christopher Shorts, a former Norfolk employee who was previously designated to testify regarding Norfolk's damages during discovery.

At trial, Thomas testified that the locomotives were worth approximately $2.7 million at the time they were destroyed. He explained that he calculated that value using the Association of American Railroads (AAR) Field Manual Rule 107 ("Rule 107"), which prescribes a formula for calculating the depreciated value of damaged or destroyed rail equipment. (R. 240 at 3-4.) Thomas testified that he was familiar with performing Rule 107 calculations as part of his employment with Norfolk and that he used the Rule 107 formula to calculate the depreciated values of Norfolk's destroyed locomotives. (*Id.* at 4-5.) Thomas stated that, using the Rule 107 formula, he calculated the depreciated value of the NS 8798 locomotive as $947,632, (*id.* at 18), and the NS 4063 locomotive as $1,735,655, (*id.* at 17). Thomas also testified that Norfolk's total loss on the two locomotives, using the calculated depreciated values less the amount Norfolk received for scrap, amounted to approximately $2.7 million. (*Id.* at 22.)

On cross-examination, counsel for Hall questioned Thomas about the repair and maintenance history of the locomotives. Hall's counsel introduced the locomotives' maintenance records and asked Thomas about them. (*Id.* at 53-64.) NS 4063's records showed that it was "shopped 27 times for trouble issues," including for "recurring dynamic brake problems" six times during the five months before the wreck and for software problems in the month before the wreck. (*Id.* at 55, 57.) NS 8798's records showed that it was "shopped for trouble problems 32 times" in the two years before the collision, including for "oil pressure problems, losing water in the cooling system, engine trouble, and brake trouble" in the month before the collision. (*Id.* at 57-58.) In his testimony, Thomas confirmed that the Rule 107 formula does not factor in a locomotive's maintenance history or ongoing maintenance problems, (*id.* at 55), nor its anticipated retirement date, (*id.* at 64). And when asked whether

– 3 –

the words "fair market value" appear in Rule 107, Thomas confirmed that they did not. (*Id.* at 49.) However, he also testified that railroads, carriers, and rail equipment owners regard Rule 107 as governing the standard for the depreciated value of damaged or destroyed equipment. (*Id.* at 36-38, 41.)

The jury later heard testimony from Christopher Shorts, a former Norfolk employee who acted as the manager of car maintenance. Shorts provided deposition testimony during discovery as Norfolk's Rule 30(b)(6) designee regarding the value of rail equipment destroyed in the collision. Portions of his deposition testimony were read to the jury at trial because he was unavailable to testify. (R. 248.) Shorts testified that he, like Thomas, used Rule 107 to calculate the value of the destroyed locomotives, and his calculations were consistent with those of Thomas. (*Id.* at 11, 15, 26-27.) Shorts stated that he did not know NS 8798's manufacturer or model. (*Id.* at 19-20.) When asked about how certain values in the Rule 107 formula were determined, he responded that while he felt certain that they were not "arbitrary number[s] picked out of the air[,] . . . [he didn't] know how they arrived at this number." (*Id.* at 29.) In answering whether Rule 107's calculated value "represents the fair market value of what a willing buyer and willing seller would use in a transaction," Shorts testified that he "[couldn't] speak to that because [he didn't] know" and that he "[didn't] know if it [was] or not." (*Id.* at 25-27.) He explained that the Rule 107 formula "ensure[s] everyone is compensated equally for their destroyed equipment." (*Id.* at 32.) However, Shorts testified that the AAR depreciated value "states the industry's idea of fair market value." (*Id.* 33.)

## II. The Parties' Motions for Judgment as a Matter of Law

At the close of evidence, but before the case was submitted to the jury, Norfolk moved for judgment as a matter of law on the issue of damages. (R. 225.) In its motion, Norfolk argued that it was entitled to judgment as a matter of law because the Defendants had not presented any evidence regarding the value of Norfolk's damaged and destroyed property, and only Norfolk presented evidence on the issue. Norfolk accordingly asked the Court to instruct the jury that if the jury reaches the issue of damages, it should determine Norfolk's damages based on the amounts Norfolk presented during trial. The Defendants simultaneously filed their own joint motion for partial judgment as a matter of law, arguing

that Norfolk failed to present sufficient evidence on the fair market value of its destroyed locomotives. (R. 224.)

After a hearing on the motions, the Court denied the Defendants' motion while taking Norfolk's motion under advisement. (R. 223.) In denying the Defendants' motion, the Court ruled that Norfolk's valuation method for its destroyed locomotives could be used to establish their fair market value. The Court later denied Norfolk's motion, leaving the issue for the jury. (R. 226.) Now, Norfolk has filed a renewed motion for judgment as a matter of law under Rule 50(b), or in the alternative, a motion for a limited new trial under Rule 59 on the issue of the value of its destroyed locomotives. (R. 239.)

## III. The Jury's Verdict

The jury was instructed that "[t]he measure of damages for property that was totally destroyed is the fair market value of the property at the time and place of the loss." (R. 227 at 21.) In its verdict, the jury found Tobergte, Hall, and Norfolk negligent, and that each party's negligence was a substantial factor in causing Norfolk's damages. (R. 229 at 1-2.) The jury apportioned fault for Norfolk's property damage claim, attributing 34% of fault to Tobergte, 33% of fault to Hall, and 33% of fault to Norfolk. (*Id.* at 4.) The jury awarded Norfolk damages for two destroyed rail cars (NS 120294 and SOU 85284), a destroyed signal mast, three damaged locomotives (NS 1167, NS 9110/4259, and 9523), damage to its railroad track, and costs to unload the locomotives for repair. (*Id.* at 5.) However, the jury did not award damages for the two locomotives that were destroyed in the collision. (*Id.*)

The page of the verdict form where the jury entered its findings as to Norfolk's damages states, "By a preponderance of the evidence, we the jury find that the fair market value of Norfolk Southern's property is as follows . . . ." (*Id.*) On separate lines, the verdict form listed each item of property for which Norfolk had claimed damages. Beside each item, there was a line where the jury could write a dollar amount representing the fair market value of that particular item. (*Id.*) In the lines provided for "Destroyed Locomotive NS 4063" and "Destroyed Locomotive NS8798," the jury wrote "$0." (*Id.*)

## ANALYSIS

In its motion, the thrust of Norfolk's argument is that the Court should set aside the jury's award of zero dollars for the destroyed locomotives because there was no evidence presented at trial to support a finding that the locomotives had no value. Norfolk relies heavily on the fact that the Defendants did not present any evidence of alternative values for the locomotives and that the only evidence of the locomotives' value was Norfolk's evidence that the locomotives had a fair market value of approximately $2.7 million.

But Norfolk seemingly ignores that it bore both the burden of proving the fact of its damages (which includes proving the locomotives' fair market value by a preponderance of evidence), and the burden of persuading the jury to accept those facts as true. While Norfolk's evidence of the locomotives' fair market value was *sufficient* to allow for a finding in its favor, the evidence did not *require* the jury to do so—a reasonable jury could have concluded the evidence was insufficient to prove damages to the required degree of certainty. Because the burden was on Norfolk to prove its case, Norfolk bore the risk associated with its failure to persuade the trier of fact. *See Purcell v. Mich. Fire & Marine Ins. Co. of Detroit*, 173 S.W.2d 134, 141 (Ky. 1943). Therefore, as explained below, Norfolk has not shown that it is entitled to judgment as a matter of law or a limited new trial.

### I.    Motion for Judgment as a Matter of Law

Norfolk contends that it is entitled to judgment as a matter of law on the issue of damages for two of its destroyed locomotives. According to Norfolk, the undisputed evidence presented at trial showed that the locomotives' value was approximately $2.7 million, and consequently, the Court should set aside the jury's award of zero dollars as "patently unreasonable and entirely unsupported." (R. 239 at 11.)

#### A.    Rule 50 Standard of Review

After "a party has been fully heard on an issue during a jury trial," a court may grant judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A Rule 50(a) motion "may be made at any time before the case is submitted to the jury," and if denied, the moving party "may file a renewed motion" under Rule 50(b) within 28 days after entry of

judgment. Fed. R. Civ. P. 50(a)(2), (b). But because the Rule 50(b) motion "is only a renewal of the preverdict motion" and "can be granted only on grounds advanced" in that earlier motion, the moving party forfeits any issues it failed to raise initially. *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020) (citations and quotation marks omitted).

In diversity actions "where a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence, 'a state-law standard of review applies.'" *Arch Ins. Co. v. Broan-NuTone, LLC*, 509 Fed. App'x. 453, 461 (6th Cir. 2012) (quoting *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 (6th Cir. 2011)). Kentucky's standard of review for a directed verdict, which is the state law equivalent of a Rule 50(b) motion, is highly deferential when evaluating jury verdicts for sufficiency of evidence. *Getty v. Getty*, 581 S.W.3d 548, 553 (Ky. 2019). A court should only grant a Rule 50(b) motion "if there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Ventas*, 647 F.3d at 314 (quoting *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 506 (6th Cir. 1998)). When deciding the issue, all evidence that favors the prevailing party must be taken as true, and all reasonable inferences must be drawn in the prevailing party's favor. *Getty*, 581 S.W.3d at 553 (quoting *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459, 461-62 (Ky. 1990)).

> **B. Norfolk Is Not Entitled to Judgment as a Matter of Law Because a Reasonable Jury Could Have Found It Failed to Meet Its Burden of Proof**

Norfolk argues that the evidence presented at trial shows that the locomotives were destroyed at a total loss and that their fair market value was $2.7 million. That the locomotives were destroyed is not in dispute—the parties agree that they were damaged beyond repair, and thus the measure of damages for the locomotives is their "reasonable market value at the time and place" that they were destroyed. *Worldwide Equip. Enters. v. Broan-Nuton LLC*, 191 F. Supp. 3d 684, 691 (E.D. Ky. 2016) (citation and quotation marks omitted).

The jury returned a verdict awarding Norfolk zero dollars in damages for the two destroyed locomotives, which Norfolk challenges as patently unreasonable. According to

Norfolk, it is entitled to judgment as a matter of law on the issue of damages for these two locomotives because the only evidence of their fair market value prior to the collision was Norfolk's evidence that the value of the locomotives was $2.7 million. Norfolk contends that the Defendants presented no evidence that the locomotives had a value of zero dollars prior to the collision, which resulted in a "complete absence of proof" for the jury's finding and entitles Norfolk to judgment as a matter of law on the issue.

However, Norfolk's motion misstates the proper analysis. In Norfolk's view, the issue is that the jury found its locomotives were worth zero dollars, even though there was no affirmative evidence that they were worth anything other than $2.7 million. But the question is not whether there was a "complete absence of proof" that the locomotives were worth zero dollars, but whether, based on the evidence presented at trial, "reasonable minds could differ" as to whether the locomotives were worth $2.7 million. *See Ventas*, 647 F.3d at 314 (citation omitted). "[I]t is axiomatic that a plaintiff bears the burden of proof by a preponderance of the evidence in a civil case" at all stages of the litigation." *Renot v. Secura Supreme Ins. Co.*, Nos. 2020-CA-0227-MR AND 2020-CA-0541-MR, 2021 WL 1933683, at *3 (Ky. Ct. App. May 14, 2021). This includes the plaintiff's burden to prove its damages "to a reasonable degree of certainty." *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1081 (W.D. Ky. 1995). In raising its motion, Norfolk fails to recognize its burden to prove its own damages, erroneously shifting the focus to the evidence the Defendants did (or did not) submit. The jury's award of zero dollars does not represent a finding that the destroyed locomotives had no value, as Norfolk frames it, but rather, that the jury found Norfolk failed to meet its burden to prove its damages with reasonable certainty. *See, e.g., Hutcherson v. Lim*, No. RWT 8-cv-3044, 2013 WL 1482861, at *6 (D. Md. Apr. 9, 2013) (finding plaintiff "failed to sufficiently prove actual damages" where the "jury awarded zero dollars in compensatory damages"); *NGL Supply Wholesale, LLC v. Crown Gas of Sauk Ctr., Inc.*, No. 09-CV-120-JHP-TLW, 2010 WL 3369140, at *2-3 (N.D. Okla. Aug. 24, 2010) (finding that a jury award of zero dollars showed the plaintiff "clearly failed to prove" its damages); *Strange v. Collins*, No. 04-4017, 2007 WL 1412541, at *2 (C.D. Ill. May 7, 2007) ("[B]ecause damages are an essential element of a tort claim, the finding of zero damages means that plaintiffs failed to meet their burden of proof.");

*Henry v. Henry*, 604 N.W.2d 285, 288-89 (S.D. 2000) (citing Prosser and Keeton on The Law of Torts, § 2 (5th ed. 1984) ("If a jury returns a verdict in the plaintiff's favor for zero damages in a case that requires proof of damages as an essential element, then the cause of action has not been proved . . . .").

The jury was instructed that "[t]he measure of damages for property that was totally destroyed is the fair market value of the property at the time and place of the loss." (R. 227 at 21.) As to how Norfolk must prove those damages, the jury was instructed as follows:

> In determining the amount of its property damages, Norfolk Southern has the burden of proof. It must prove the amount of its damages by a preponderance of the evidence, and must establish its damages with reasonable certainty. This means Norfolk Southern must present enough evidence for you to arrive at an intelligent and probable estimate of the amount of damages it incurred. It does not have to prove its damages with mathematical exactness, but it cannot recover damages that are based on conjecture or speculation.

(*Id.*) The parties agreed that these instructions were a proper and correct statement of applicable law.

Norfolk's evidence of the locomotives' value may have been the only affirmative evidence of their value, but the jury was not required to accept that evidence. *Commonwealth v. O'Conner*, 372 S.W.3d 855, 858 (Ky. 2012) ("[I]t has been the long-standing law in this state that it is within the jury's province to consider and believe, believe in part, or totally disregard as non-credible any evidence presented."). As the party carrying the burden of proof, it was Norfolk's burden both to produce evidence of the fact of its damages and to persuade the jury of the truth of that fact. Kenneth S. Broun et al., McCormick on Evidence § 336 (8th ed. 2022) ("One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true.").

Here, it was up to Norfolk to convince the jury that, more likely than not, $2.7 million was a reasonably "intelligent and probable estimate" of the locomotives' fair market value at the time they were destroyed. If the jury was not persuaded that it could reach an intelligent and probable estimate of the destroyed locomotives' value, it could not award Norfolk damages for the locomotives. Granting every reasonable inference in the Defendants' favor, as the Court must, an award of zero dollars indicates that the jury found Norfolk failed to

present evidence sufficient to conclude that $2.7 million was an intelligent and probable estimate of the locomotives' value.

The jury could have reasonably concluded that Rule 107 itself is not evidence of fair market value based on testimony presented at trial. Shorts testified that he did not know the rationale for certain values in the Rule 107 formula and simply stated that they were "prescribed." (R. 248 at 28.) He also testified that the formula "ensure[s] everyone is compensated equally for their destroyed equipment." (*Id.* at 32.) A formula that prescribes values in order to ensure equal compensation is distinguishable from one that represents fair market value, and the jury could have concluded as much. And though Shorts also testified that he was "certain" the prescribed values were not arbitrary, (*id.* at 29), and that the formula is "the industry's idea of fair market value," (*id.* at 33), a reasonable jury could have disagreed.

For the same reasons, a reasonable jury could have also concluded that the values prescribed by the Rule 107 formula did not provide an "intelligent and probable estimate" of the locomotives' fair market value. The jury heard testimony showing that a locomotive's make, model, anticipated retirement date, maintenance history, and ongoing maintenance issues are not considered in the Rule 107 formula. (R. 240 at 55, 64; R. 248 at 20, 26.) The jury was instructed to use "common sense" and "everyday experience" when evaluating witness testimony, (R. 227 at 10-11), and in doing so, a reasonable jury could have concluded that these factors materially impact fair market value. A reasonable jury could have concluded that a formula that assigns the same value to a locomotive regardless of these factors is not a reasonably certain or probable estimate of fair market value. *See Worldwide Equip. Enters.*, 191 F. Supp. 3d at 691-92 (excluding expert testimony on the "actual cash value" of property because the expert did not know the property's condition, use, life expectancy, or the material it was made from, making her valuation "just a rough estimate of what the items were worth").

Relatedly, the jury also heard testimony regarding the maintenance and repair history of each locomotive. Thomas's testimony confirmed that NS 4063's records showed that it was "shopped 27 times for trouble issues," including for "recurring dynamic brake

problems" six times during the five months before the wreck and for software problems in the month before the wreck. (R. 240 at 55, 57.) He testified that NS 8798's records similarly showed that it was "shopped for trouble problems 32 times" in the two years before the collision, including for "oil pressure problems, losing water in the cooling system, engine trouble, and brake trouble" in the month before the collision. (*Id.* at 57-58.) Because Rule 107 does not indicate how these repairs might affect the locomotives' fair market value, a reasonable jury could have concluded that it did not have enough information to arrive at an estimate of that value to a reasonable degree of certainty. The repairs may have been completely normal and routine repairs that do not materially impact a locomotive's value. But the jury was presented with no evidence on the issue, and the Rule 107 formula does not account for maintenance history. This left the jury to speculate as to whether the repairs impacted the locomotives' fair market value, and if so, by how much. The jury was specifically instructed that it was not to speculate as to damages, and here, the jury could have concluded that it could not award reasonably certain damages because it could only speculate as to whether the locomotives' maintenance history affected their fair market value.

An analogy to the Kelley Blue Book helps illustrate this point. A car's Blue Book value represents the fair market value of that type of vehicle, accounting for various factors such as make, model, year, mileage, and condition. The Blue Book value is considered as a generally accurate estimate of the vehicle's fair market value. But the Blue Book does not account for every factor that affects a specific car's value. For example, if your car needs certain repairs or maintenance, such as a new brake line or catalytic converter, it is likely worth less than the Blue Book estimate for a typical car of that make, model, year, etc. And if your car needs extensive repair, such as a new transmission or suspension, the Blue Book estimated value is not likely an intelligent or probable estimate of the car's actual fair market value. Similarly, a car that has required lots of repairs over time will likely be worth less than the average car. A car with an extensive history of repairs is likely to have a fair market value significantly less than the value estimated by the Blue Book, which does not take maintenance history into account. So, while the Blue Book gives a general estimate of a car's

fair market value based on the standard value for other similar cars, it does not account for those individual characteristics that could significantly impact the value of a specific car.

The same is true of the Rule 107 formula and the locomotives at issue. Even if a jury accepts that the formula is generally a reasonable estimate of a locomotive's fair market value, if a locomotive needs repairs or maintenance or has an extensive repair history, the jury could reasonably conclude that the formula is not a reliable estimate for that particular locomotive. In response to questioning on cross-examination, Thomas testified that one of the locomotives had "trouble issues" twenty-seven times in the two years before the collision, including six occasions of dynamic brake problems in the five months before the collision and software problems. He also testified that the other locomotive underwent repairs thirty-two times in the two years before the collision, including the month prior for oil pressure problems, cooling system problems, engine trouble, and brake trouble. The jury could have concluded that Norfolk's failure to account for these recurring problems impeached the reliability of its damage calculations and claims.

To be clear, there was no evidence presented that indicated that the two destroyed locomotives needed expensive repairs or that their maintenance history significantly diminished their value. Indeed, the maintenance history of these locomotives may have been completely normal and ultimately irrelevant to their fair market value. The problem is that because Norfolk presented no evidence on the issue, the jury could have reasonably inferred otherwise or felt that it was left to speculate.

Norfolk maintains that the locomotives were working and in active use just before the collision. However, just because a locomotive was working and in use does not mean that it was in good condition or that it was not in need of repair or maintenance. Returning to the car analogy, a vehicle that has had lots of repairs, or even needs extensive repair, can still be driven. A car with a broken air compressor, warped rotors, worn out spark plugs, worn down tire treads, and a worn-out power steering pump can still be driven. But the cost to fix those issues is significant and would materially impact the vehicle's value. Likewise, using commonsense and everyday experience, the jury could have reasonably concluded that a

locomotive may still work while needing significant repairs that would substantially affect its value.

Drawing all reasonable inferences in the Defendants' favor, the Court finds that the jury could have reasonably concluded that Norfolk failed to meet its burden of proof on the issue of the destroyed locomotives' value. Because "reasonable minds could differ" as to whether Norfolk proved the fair market value of the destroyed locomotives with reasonable certainty, Norfolk is not entitled to judgment as a matter of law on the issue, and the Court denies its motion. *Ventas*, 647 F.3d at 314.

## II.  Motion for a Limited New Trial

### A.  Rule 59 Standard

Under Rule 59 of the Federal Rules of Civil Procedure, the Court may "grant a new trial on all or some of the issues—and to any party—[a]fter a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A district court may grant a new trial on the issue of damages alone. *Davis ex rel. Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990). In the Sixth Circuit, a new trial may be warranted "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). A trial court has broad discretion to determine whether the moving party has identified sufficient grounds to warrant a new trial. *See Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509-10 (6th Cir. 2013) (reviewing district court's denial of motion for new trial under an abuse of discretion standard).

### B.  A New Trial Is Not Warranted

In its motion, Norfolk argues that it is entitled to a new trial on the issue of damages for its destroyed locomotives, asserting that the jury verdict was against the weight of the evidence and that the trial was unfair. The Court addresses each argument in turn.

#### 1.  *The Jury's Verdict Was Not against the Weight of the Evidence*

A new trial is not appropriate where, based on the evidence presented, a reasonable jury could find that a plaintiff did not establish all the required elements of its claim. *See*

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) ("If the verdict was one which the jury reasonably could have reached, then a motion for a new trial should be denied.") (citations and quotation marks omitted). Here, Norfolk summarizes the evidence presented at trial in a light most favorable to its own case, explaining how Rule 107 could establish the fair market value of its destroyed locomotives. But despite Norfolk's effort to reargue its case to show only one possible conclusion, it has failed to demonstrate any obvious defects in the Defendants' arguments, and the Defendants point to evidence (or rather, a lack of evidence) that could lead a trier of fact to reasonably conclude Norfolk did not, in fact, meet its burden. As explained above, a reasonable jury could have found that Norfolk failed to meet its burden of proof as to the value of its destroyed locomotives. As it is up to the jury, and not the Court, to weigh the evidence, and because Norfolk has not pointed to any evidence presented at trial that was so conclusive as to render only one possible reasonable verdict, a new trial under Rule 59 is not warranted. *Waldo*, 726 F.3d at 813 (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)) ("[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."). Accordingly, Norfolk has failed to show that the jury's verdict is against the weight of the evidence and is not entitled to a new trial on that ground.

### 2. *There Is No Evidence that the Jury's Verdict Was Influenced by Prejudice against Norfolk*

Norfolk argues that it is entitled to a new trial because the jury's zero dollar verdict was "so disproportionate as to suggest passion, prejudice, corruption, or mistake." *Tarrants v. Owens-Corning Fiberglas Corp.*, No. 97-6043, 225 F.3d 659 (Table), 2000 WL 977375, at *4 (6th Cir. July 7, 2000). According to Norfolk, the Defendants' counsel prejudiced the jury "by injecting ideas regarding an imbalance of power or position that exists between a large corporation and an individual." (R. 239 at 21.)

"Misconduct by an attorney that results in prejudice may serve as a basis for a new trial. The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for new trial." *Troyer v.*

– 14 –

*T.John.E. Prods, Inc.*, 526 F. App'x 522, 525 (6th Cir. 2013) (quoting *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004)). A party seeking a new trial based on the conduct, comment, or argument of opposing counsel "must make a concrete showing that the misconduct of counsel consistently permeated the entire trial from beginning to end." *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). The party seeking a new trial must show not only that opposing counsel's conduct was improper, but that it was "prejudiced by the impropriety, that is, that there is a reasonable probability that the jury's verdict was influenced by the improper argument[s]." *Troyer*, 526 F. App'x at 525 (quoting *Fuhr*, 364 F.3d at 760).

"The procedural issue of whether to grant a motion for new trial is governed by [Rule 59], but the substantive question of whether the verdict is excessive or inadequate is governed by state law." *In re Air Crash*, Civil Action (Master File) No. 5:06-CV-316-KSF, 2010 WL 1416748, at *1 (E.D. Ky. Apr. 2, 2010) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The standard of review for the adequacy of a verdict is therefore a matter of Kentucky substantive law. *See id.* (citing *Gasperini*, 518 U.S. at 429-31.) Under Kentucky law, a court should not set aside a verdict as inadequate "unless it is so grossly disproportionate as to the measure of damages, or is palpably against the evidence, as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice." *Id.* (quoting Wilson v. Redken Laboratories, Inc., 562 S.W.2d 633, 636 (Ky. 1978)).

Norfolk points to several arguments and comments made by the Defendants' counsel to show that the jury's verdict was the result of passion or prejudice. First, Norfolk points to opening arguments where Tobergte's counsel stated that his client had anxiety and suicidal thoughts due to the potential legal consequences of the collision. (R. 239 at 22; R. 255 at 20.) After a sidebar, the Court instructed the jury to disregard counsel's statement, stating that "a defendant's anxiety about having been sued . . . is not an appropriate matter for [jury] consideration" and that the jury was "not to consider it for any purpose." (R. 255 at 22.)

Norfolk claims that in Hall's opening argument, his counsel made statements that Hall was upset after Norfolk sued him. (R. 239 at 22.) According to Norfolk, after another sidebar, the Court again instructed the jury that it should not consider argument or evidence

– 15 –

related to the Defendants' personal feelings about Norfolk suing them.[1] (*Id.*) Norfolk argues that the Defendants' questioning of Shannon Mason injected the same prejudicial ideas into the trial when Tobergte's counsel asked Mason on cross-examination if he believed it was fair that Norfolk had sued the Defendants for $3 million. (*Id.*)

Norfolk also points to the Defendants' closing arguments, where defense counsel made allegedly improper statements that the jury "had the power to change their clients' quality of life in connection with their verdict." (*Id.*) Specifically, Norfolk points to a statement made by Hall's counsel that he had been "taking care of his client for four years," and "now it [was] time for the jury to take care of his client." (*Id.*)

Even if the Court assumes that the arguments and statements cited by Norfolk were improper, they do not warrant a new trial. To the extent that statements by the Defendants' counsel "inject[ed] ideas regarding an imbalance of power or position that exists between a large corporation and an individual," (*id.* at 21), Norfolk has failed to show that it was actually prejudiced by those statements. To the contrary, the jury's notes, questions, and verdict indicate that it carefully, thoughtfully, and fairly considered each of the parties' claims and counterclaims. And as explained above, there is a reasonable explanation for the jury's award of zero dollars for the locomotives—it found Norfolk failed to meet its burden to prove the locomotives' fair market value.

Moreover, the Court's admonishments and instructions to the jury cured any prejudice that the Defendants' counsel may have invited. "[J]uries are presumed to follow the court's instructions," *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009), and "improper comments can be 'sufficiently remedied by the trial court's curative instruction along with the preliminary and final instructions given to the jury.'" *Key v. Rapelje*, 634 F. App'x 141, 150 (6th Cir. 2015) (citation omitted). The Court swiftly gave curative instructions each time counsel objected to improper comments, and gave the jury clear, careful preliminary and final

---

[1] The Court has found no evidence of this in the record. In its brief, Norfolk states that during Hall's opening argument, a second sidebar was held and that it again moved for a mistrial. (R. 239 at 22.) However, the trial transcript does not show a sidebar, motion for a mistrial, nor even any objection from Norfolk's counsel during Hall's opening. (R. 255 at 27-40.) Nevertheless, the Court assumes Norfolk's contentions are true for purposes of this motion.

instructions. The Court instructed the jury that it was to consider the case "without bias or prejudice," "carefully and impartially consider all of the evidence," and avoid influence by "sympathy, prejudice, or public opinion." (R. 227 at 2.) The jury was instructed that it should decide the case "only on the evidence" presented at trial and that the "lawyers' statements and arguments are not evidence." (*Id.* at 5.) The jury was also instructed that "corporations and other organizations stand equal before the law" and that "Norfolk Southern is entitled to a fair consideration" of all claims in the case. (*Id.* at 3-4.)

The jury's verdict was also not "so grossly disproportionate" or "palpably against the evidence" that it "shock[s] the conscience" or "raise[s] an irresistible inference that it was influenced by passion or prejudice." *Wilson*, 562 S.W.2d 633 (citation and quotation marks omitted). As explained above, the jury's verdict was not "palpably against the evidence" at all, and certainly does not "shock the conscience" or "raise an irresistible inference" of prejudice. There is an entirely reasonable explanation for the jury's verdict—the jury determined that Norfolk failed to meet its burden of proof on the issue of the destroyed locomotives' fair market value.

In sum, Norfolk has failed to show that the jury's verdict was influenced by passion or prejudice. Despite its vigorous assertions of prejudice, Norfolk has not presented any evidence of bias. The jury was instructed to decide the case without prejudice and to give all parties fair consideration—there is no reason to believe the jurors failed to follow these instructions. A reasonable jury could have found Norfolk failed to meet its burden to show the destroyed locomotives' value. Accordingly, Norfolk has failed to show it is entitled to a limited new trial on the issue of the value of its destroyed locomotives, and the Court denies its motion under Rule 59.

## CONCLUSION

Accordingly, for the reasons stated in this Opinion, the Court hereby **ORDERS** that Norfolk Southern Railway Company's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a Limited New Trial (R. 239) is **DENIED**.

This 13th day of March, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY